**J.M. GEBAUER, INC., and KEPAOA DEVELOPMENT CORPORATION, Appellants,**

**v.**

**AMERICAN SAMOA POWER AUTHORITY, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 05-02

April 12, 2004

Before KRUSE, Chief Justice, GOODWIN,[*] Acting Associate Justice, TASHIMA,[**] Acting Associate Justice, ATIULAGI, Associate Judge, SAGAPOLUTELE, Associate Judge.

Counsel: For Appellant, Katopau T. Ainu`u
 For Appellee, Roy J.D. Hall, Jr.

## OPINION

KRUSE, Chief Justice:

J.M. Gebauer, Inc. ("JMG") and Kepaoa Development Corporation ("Kepaoa" or collectively with JMG, "lessor") appeal from the trial court's judgment in this case, which involves a dispute over the breach of a lease agreement. Appellants contend that the trial court erred in its order and opinion by: (1) failing to apply the "modern rule" in order to determine damages due under the lease; (2) finding Appellants accepted the appellee's surrender of the lease; (3) finding Appellants permitted the appellee to use space outside of the lease agreement for no charge; (4) finding appellee was entitled to $25,000 for unpaid utility bills; and (5) awarding Appellants an insufficient amount of punitive damages. For the following reasons, we AFFIRM in part and REVERSE in part.

## Background

On November 5, 1997, American Samoa Power Authority ("ASPA" or

---

[*] Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.
[**] Honorable A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

15

"lessee") and J.M. Gebauer, Inc. entered into a lease for a property in Nu`uuli commonly known as the Aiga Basket ("the premises") for a term of twenty years. *Gebauer v. American Samoa Power Auth.*, 5 A.S.R.3d 204, 206 (Trial Div. 2001). In 2000, Kepaoa Development Corporation assumed the lessor's rights and obligations under the lease agreement. *Id.* As part of the lease agreement, JMG was obligated to pay its outstanding utility bills to ASPA.

Throughout the lease period, ASPA used approximately 272 square feet of additional space without paying rent. *Id.* On October 18, 2000, lessor notified ASPA that it was in default on the rental payments and also demanded payment for the 272 square feet of additional space. Lessor notified ASPA that it had thirty days to remedy the default. *Id.* On November 14, 2000, ASPA quit the premises. *Id.* at 207. ASPA caused substantial damage to the premises during the move, which the lessor repaired at its own expense. *Id.*

Trial was held on July 12, 2001. On December 7, 2001, the trial court awarded JMG and Kepaoa $21,626.26 in compensatory and $5,000 in punitive damages. This award was to compensate JMG and Kepaoa for the damages ASPA caused to the premises. *Id.* at 210. The trial court also found that JMG and Kepaoa accepted ASPA's surrender of the premises, and that ASPA had paid all the rentals that it owed prior to JMG and Kepaoa's acceptance. *Id.* at 208. Additionally, the trial court found that ASPA was not liable for its use of the extra space. *Id.* at 209. The trial court also awarded ASPA $25,000 in damages on its counterclaim for unpaid utility bills. *Id.* at 211. JMG and Kepaoa filed a motion for a new trial or reconsideration which was denied by the trial court on February 5, 2002. On February 11, 2002, JMG and Kepaoa filed a notice of appeal.

## Discussion

### I. Standard of Review

"A trial court's factual determinations are reviewed for 'clear error' and questions of law or mixed questions of law and fact are reviewed de novo." *Roman Catholic Diocese of Samoa Pago Pago v. Avegalio*, 20 A.S.R.2d 70, 73 (App. Div. 1992) (emphasis omitted). The test for clear error is "not whether facts in the record may support a decision for an appellant, but whether sufficient evidence supported the trial court's decision." *Toleafoa v. American Samoa Gov't*, 26 A.S.R.2d 20, 21 (App. Div. 1994).

### II. "Old Rule" v. "Modern Rule"

Appellants argue that the trial court should have applied the "modern

16

rule"[1] rather than the "old rule"[2] in determining ASPA's liability under the lease.[3] The Appellants failed to raise this issue in their motion for a new trial or reconsideration. A motion for a new trial is a jurisdictional prerequisite to appeal. A.S.C.A. § 43.0802(a). As such, we cannot review this issue that was not raised in Appellants' motion for a new trial or reconsideration. *See Kim v. Star-Kist Samoa, Inc.*, 8 A.S.R.2d 146, 149 (App. Div. 1988) (finding the appellate court lacked jurisdiction to consider appellant's argument that the appellee was independently negligent when the appellant failed to raise that issue in its motion for a new trial).

## III. Acceptance

 Appellants contend that the trial court's finding that JMG and Kepaoa accepted ASPA's offer of surrender after ASPA abandoned the premises is clearly erroneous. Whether the lessor accepted the lessee's surrender is a question of fact. *See, e.g., Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 669 (E.D. Penn. 2003); *Riggs v. Murdock*, 458 P.2d 115, 118 (Ariz. Ct. App. 1969); 49 AM. JUR. 2D *Landlord and Tenant* § 249 (1995). The trial court considers the evidence "in light of the surrounding circumstances and determine[s] whether the dominion and control exercised by the landlord was for the landlord's own benefit or

---

[1] According to Appellants, under the "modern rule," "when a tenant wrongfully abandons the property, the landlord is under a duty to mitigate its damages and may sue the tenant for breach of contract damages." (Appellants' Br. at 11.)

[2] According to Appellants, under the "old rule," the lessor has three options upon a tenant's abandonment:

> (1) the landlord could accept the surrender of the premises, which would terminate the lease and the tenant's obligations under the lease, and sue only for unpaid rent up to the date of termination; (2) the landlord could re-enter the property and attempt to mitigate his damages, holding the tenant liable for any deficiencies that occur; or (3) the landlord could allow the property to remain vacant and sue the tenant for rent for the remainder of the lease term.

(Appellants' Br. at 10.)

[3] The trial court held that the lessor could:

> (1) accept the lessee=s offer of surrender and terminate the lease, leaving lessee liable only for rent accrued before the acceptance and damage caused by the abandonment or (2) attempt to lease the premises to another lessee as a means of mitigating the loss of rents, in which case the original lessee is liable for the difference between promised rent and rents obtained.

*Gebauer*, 5 A.S.R.3d at 208.

for the benefit of and on behalf of the original tenant." *Riggs*, 458 P.2d at 118.

The trial court's finding that JMG and Kepaoa were acting for their own benefit when they reentered the premises is supported by substantial evidence. "Whether or not a dissatisfied litigant had himself presented substantial evidence is not . . . the test for clear error. Rather, the question is whether there was substantial evidence to support the trial court=s conclusions." *Moea`i v. Alai`a*, 12 A.S.R.2d 91, 93 (App. Div. 1989). Accordingly, the trial court's finding that the lessor accepted the lessee's surrender of the premises is not clearly erroneous and will not be disturbed.[4]

## IV. Additional Space

Appellants argue the trial court's finding that they permitted ASPA to use an extra 272 square feet of space free of charge until October 18, 2000 was clearly erroneous. The lessor claims this decision was clearly erroneous because the evidence demonstrated that the parties had negotiated for the additional space prior to the October 18, 2000 demand for compensation, and because the trial court's decision was inconsistent with other findings. (Appellants' Br. at 23-25.)

■ There was conflicting evidence presented at trial on this issue. Hugo Ryanny Gebauer, Jr. ("Ryanny") testified for JMG and Kepaoa that he did not allow ASPA to use the space for free and that he was trying to reach an agreement with ASPA regarding the space. (Trial Tr. at 13-15, 26-28, 35.) However, Gary Sword testified that JMG and Kepaoa allowed ASPA to use the space for free, and that ASPA never accepted any agreement with JMG and Kepaoa to make rental payments for that space. (Trial Tr. at 52, 54-55, 66.) In light of the evidence adduced at trial, the trial court's finding that the lessor did not demand compensation until October 18, 2000 and that the use prior to this time was permissive is not clearly erroneous. *See Roman Catholic Diocese of Samoa Pago Pago*, 20 A.S.R.2d at 73 ("The reviewing court accords particular weight to the trial judge's assessment of conflicting and ambiguous facts."); *American Samoa v. Makuati*, 1 A.S.R. 663, 664 (App. Div. 1938) ("[I]t is not the province of the appellate court to determine the credibility of conflicting evidence.") (citations omitted). Accordingly, the trial court's finding that the lessor permitted ASPA to use the extra space free of

---

[4] JMG and Kepaoa argue that even if they did accept ASPA's surrender of the premises, they are still entitled to recover contract damages. (Appellants' Br. at 22-23.) Like their argument regarding the "modern rule" versus the "old rule" (*see supra* at 16), Appellants failed to raise this issue in their motion for new trial or reconsideration. As such, we cannot review it. *See Kim*, 8 A.S.R.2d at 149.

18

charge will not be disturbed.

## V. Unpaid Utilities

The trial court found that ASPA "established the unpaid electrical and water charges at $25,000." *Gebauer*, 5 A.S.R.3d at 210. In its order denying a new trial or reconsideration, the trial court found that "the agreements between the parties" supported its position that JMG and Kepaoa were liable for the unpaid utility charges. *Gebauer v. American Samoa Power Auth.*, CA No. 139-00, Order on Motion for Reconsideration or New Trial at 2-3 (Trial Div. Feb. 5, 2002). The trial court also found that "[t]estimony showed that Ryanny Gebauer had the authority to enter the agreement on plaintiffs= behalf." *Id.* at 3.

The Appellants argue that no evidence was produced at trial demonstrating that the lessor "had any obligation to settle any of its related entities' outstanding accounts" or that "Gebauer had the authority to negotiate and settle the accounts of the other entities." (Appellants' Br. at 26.)

The trial court did not specify which agreement or agreements it found entitled ASPA to the $25,000 in unpaid utility bills from JMG and Kepaoa. The parties agreed at trial that the amount owed by JMG to ASPA for unpaid utility bills is $4,774.88. (Trial Tr. at 93.) Accordingly, it appears the trial court's remaining award of $20,225.12 to ASPA was to cover debts incurred by JMG's "related entities." Thus, the trial court determined that JMG was obligated for these debts under an agreement or agreements. *Gebauer*, CA No. 139-00, Order on Motion for Reconsideration or New Trial at 2-3.

■ Essentially three agreements were discussed at trial: (1) the lease (Trial Ex. 24); (2) the guarantees (Trial Ex. 33); and (3) the purported settlement regarding the additional space and outstanding utility bills (Trial Tr. at 27-28, 88-90). The relevant provision of the lease states:

> Furthermore, Landlord will bring current any outstanding indebtedness to Tenant from previous utility accounts within ninty [sic] (90) days or such sums, upon reconciliation between Landlord and Tenant, shallbe [sic] deductible from Lease payments.

(Trial Ex. 24.) In the lease, "Landlord" is defined as J.M. Gebauer, Inc. (*Id.*) Ryanny signed the lease for JMG as its corporate officer. (*Id.*) According to the lease, JMG as the "Landlord" was responsible for bringing its utility debts current. ASPA argues that trial testimony indicated that it was understood by the parties that this provision also included debts owed by JMG affiliated companies. (Appellee's Br. at

31-32.) However, the trial court did not find the lease ambiguous nor did the parties make any argument to this effect. Therefore, under the terms of the lease the only outstanding payments ASPA was entitled to were those owed by JMG. Any testimony to the contrary is parol evidence and not appropriately considered. *See, e.g., Asifoa v. Nat'l Pac. Ins. Co.*, 26 A.S.R.2d 99, 100 (Trial Div. 1994); 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS §§ 33:1, 33:37 (4th ed. 1999). As such, ASPA was not entitled to the remaining amount of $20,225.12, an amount attributed to JMG's "related entities," under the lease agreement.

Three "Utility Payment Agreements" were introduced at trial. (Trial Ex. 33.) One agreement between ASPA, Ryanny, and Jude Corporation/ Ryan, Inc. shows an outstanding debt to ASPA of $29,049.30. Ryanny was listed as the customer in the agreement. Ryanny signed this document as the "owner" of the ASPA "customer" in the agreement and agreed to make monthly payments on this outstanding debt. The agreement makes no mention of JMG or Kepaoa and no evidence demonstrates that Ryanny's signature on this agreement obligates JMG or Kepaoa to be responsible for the debt. Likewise, another one of these agreements is between Ryanny, Hugo Gebauer, Jr. and ASPA showing a delinquent amount of $2,065.90. This agreement also fails to mention JMG or Kepaoa. These agreements do not indicate that JMG or Kepaoa is responsible for these debts or that Ryanny's signature on them obligated JMG or Kepaoa to pay the debts.[5] Moreover, Ryanny is not a plaintiff to this action and the trial court made no findings that Ryanny was the alter ego of JMG or Kepaoa. Accordingly, the "Utility Payment Agreements" do not show that JMG or Kepaoa was liable to ASPA for the remaining award of $20,225.12 in unpaid utility bills.

Evidence was also presented at trial that Ryanny and ASPA were negotiating for payment of the outstanding utility bills in exchange for use of the 272 square feet of extra space. ASPA presented evidence that it never accepted this agreement. The trial court did not explicitly address these negotiations, but its finding that ASPA was allowed use of the extra space for free until October 18, 2000 indicates that it did not find an agreement had been reached between ASPA and JMG regarding the extra space and outstanding utility debt. *Gebauer*, 5 A.S.R.3d at 209. Accordingly, the trial court could not have relied on these negotiations as the basis for imposing liability on JMG and Kepaoa for the outstanding utility debt. Absent any factual or legal basis for the trial court's award

---

[5] The third agreement is between Ryanny Gebauer, J.M. Gebauer, and ASPA in the amount of $2,321.64. However, this amount is already included in the parties' stipulated amount of $4,774.88. ASPA's Opp. to Mot. for New Trial or Reconsideration at 5, *Gebauer*, CA No. 139-00 (Trial Div.).

of $20,225.12 to ASPA for the unpaid utility bills of Ryanny or other JMG "related entities," it is clearly erroneous and, therefore, we reverse this award.

## VI. Punitive Damages

Appellants argue that the trial court's award of $5000 in punitive damages was inadequate and irrational. The appellants failed to raise this issue in their motion for a new trial or reconsideration. As such, we cannot review this issue. *See supra*, at 17; *Kim*, 8 A.S.R.2d at 149.

### Conclusion

The trial court's award to ASPA of $20,225.12 in damages for the unpaid utility bills of entities other than JMG or Kepaoa is REVERSED. The trial court's decision is AFFIRMED in all other respects.

It is so ordered.